IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

JOE E. RUFFIN                                                                                        PLAINTIFF

VS.                                                         CIVIL ACTION NO. 3:13cv163-DPJ-FKB

CAROLYN W. COLVIN,
ACTING COMMISSIONER
OF SOCIAL SECURITY                                                                           DEFENDANT

**REPORT AND RECOMMENDATION**

Joe E. Ruffin brought this action to obtain judicial review of a final decision of the Commissioner of the Social Security Administration.  Presently before the Court are Plaintiff's motion for judgment on the pleadings [13] and Defendant's motion to affirm the Commissioner's decision [18].  Having considered the memoranda of the parties and the administrative record, the undersigned recommends that Plaintiff's motion be denied and that Defendant's motion be granted.

**I.  Procedural History**

Ruffin was born on July 14, 1956, and was 55 years of age at the time of the ALJ's decision.  He has an eleventh grade education.  His past relevant work experience is as a forklift operator, lubrication technician, auto parts salesperson, painter, and truck driver.  He alleges disability due primarily to low back pain.  He filed for disability insurance benefits and supplemental security income on January 22, 2008, and June 2, 2008, respectively, alleging an onset date of July 1, 2006.  Ruffin's applications were denied initially and on reconsideration, and he requested and was granted a hearing before an

administrative law judge (ALJ).  After a hearing, the ALJ issued a decision finding that Ruffin is not disabled.  The Appeals Council granted review and remanded for further proceedings.  Following a supplemental hearing, the ALJ issued a decision on February 17, 2012, again finding that Ruffin is not disabled.  The Appeals Council denied review, thereby making the decision of the ALJ the final decision of the Commissioner.  Ruffin then brought this appeal pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## II. Evidence Before the ALJ

The medical records indicate that Ruffin has complained of and been treated for low back pain since he was involved in a fork-lift accident in early 2006.  Following the accident, he was diagnosed with lumbar spasms by his treating physician, Dr. L.C. Tennin, who prescribed Flexeril and ibuprofen and referred him for physical therapy.  R. 557-70.  An MRI of the lumbar spine performed on May 3, 2006, revealed mild bilateral foraminal narrowing at L3-4 and L4-5 secondary to facet hypertrophy.  R. 392.  In June of 2006, he began seeing Dr. Eriator for pain management.  Dr. Eriator placed him on tramadol, nabumetone, and Lidoderm patches, and over the next several months he administered a series of lumbar epidural blocks and one lumbar epidural steroid injection.  R. 424-58.  During this period, Ruffin rated his pain at levels from five to eight on a ten-point scale.  R. 440, 454, 456, 556.  Nerve conduction studies in August of 2006 indicated lumbar radiculopathy at L5-S1.  R.  553.  During an office visit with Dr. Tennin on November 20, 2006, Ruffin reported his pain was unchanged, despite the injections.  R. 551.  However, in March of 2007, he told Dr. Eriator that his pain had increased and

requested that the injections be resumed.  R. 419.  Dr. Eriator administered another epidural steroid injection, which Ruffin claimed helped for only three days.  R. 414, 617. Progress notes from Dr. Eriator dated April 9, 2007, indicate that Ruffin was using a heating pad and a TENS unit for pain.  R. 417.  Examination revealed mild tenderness of the paraspinal muscles, and straight leg raising was positive at sixty degrees.  *Id.* Assessment was lumbar radiculopathy and associated low back pain with herniated nucleus pulposus.  *Id.*  A neurosurgical evaluation in May of 2007 by Dr. Jack Moriarty resulted in no recommendation for surgery.   R. 463-64, 495.

Dr. Rahul Vohra at Southern Physical Medicine evaluated Ruffin on June 21, 2007. Physical exam revealed mild lumbar paraspinal spasms.  R. 495.  At Dr. Vohra's recommendation, Ruffin began chiropractic treatment in June of 2007 by Dr. R.A. Foxworth.  R. 475-76.  This treatment continued through September of that year.  Notes by Dr. Foxworth indicate that Ruffin progressed more slowly than expected and consistently rated his pain between a seven and nine.  R. 469-92.  On November 19, 2007, Ruffin presented to the Madison County Medical Center Emergency Room with complaints of low back pain and headache with an intensity of ten.  R. 505, 510.  He was given an injection of Toradol and referred to Dr. Tennin for followup.  R. 507, 514.  Ruffin continued to see Dr. Tennin for back pain through the date of the ALJ's decision.

Ruffin underwent a lumbar x-ray on April 28, 2010, the results of which were normal.  R. 782.  A second lumbar MRI, performed on January 31, 2011, revealed mild lumbar spondylosis with no significant canal or foraminal compromise seen.  R. 743.

3

On January 17, 2010, Ruffin presented to the emergency room at St. Dominic Hospital with complaints of chest pain and low back pain. R. 648-49. Diagnosis was elevated systolic blood pressure and low back pain, for which he was given Toradol intravenously. R. 653. He was discharged with prescriptions for Darvocet, Flexeril, and Naprosyn. R. 657. A second episode of chest pain occurred on February 18, 2011, for which he again presented to the St. Dominic emergency room. R. 709. At this time, Ruffin gave a history of a myocardial infarction more than ten years earlier and a subsequent heart catheterization, which was normal. R. 719. However, there is nothing in the medical records to corroborate this history. Ruffin was treated with nitroglycerin and released for follow-up with a cardiologist. R. 714, 719-20.

Ruffin's medical history is also notable for non-insulin dependent diabetes, for which he has been treated with Metformin; hypertension (at times uncontrolled), for which he has taken HCTZ; and sleep apnea, for which has been prescribed a CPAP machine.

A consultative examination was performed by Dr. Garth Murray on July 24, 2008. R. 588-89. At the exam, Ruffin's weight was 250 pounds, and his blood pressure was 170/84. R. 588. Ruffin reported to Dr. Murray a history of myocardial infarction and chest pain. *Id.* Dr. Murray noted that Ruffin walked with a cane, had significant difficulty getting on and off the exam table, and could remain seated for only five minutes at a time. R. 588-89. Straight leg raising was positive at 60 percent on the right and 50 percent on the left. R. 589. Ruffin had tenderness in the lower lumbar region but a normal range of motion. *Id.* Dr. Murray's impression was (1) status post myocardial infarction with

Case 3:13-cv-00163-DPJ-FKB   Document 23   Filed 07/23/14   Page 5 of 11

consistent angina; (2) hypertension; (3) non insulin-dependent diabetes; and (4) significant lumbar dystrophy with bilateral radiculitis, worse on the left than the right. *Id.*

On October 5, 2008, Dr. Louis Saddler, a non-examining consultant, performed an RFC assessment. R. 598-605. Dr. Saddler opined that Ruffin could lift/carry 50 pounds occasionally and 25 pounds frequently, that he could sit/stand for six hours in an eight-hour day, and that he could perform unlimited push/pull activities, including the operation of hand and/or foot controls, with no other limitations. R. 598-605.

A consultative examination was performed by Dr. Robert Tatum on May 8, 2010. R. 634. Ruffin weighed 250 pounds, and his blood pressure was 143/71. R. 635. Medications at this time included Darvocet, Naprosyn, a TENS unit, Flexeril, HCTZ, Metformin, Limbitrol, and Zantac. R. 634-35. Dr. Tatum noted that Ruffin walked slowly and with a limp, and that he had mild difficulty getting on and off the exam table, getting up from the chair, and getting undressed and dressed. R. 635. Ruffin reported to Dr. Tatum that he suffered episodes of chest pain five to ten times per month, each episode lasting approximately ten to fifteen minutes. R. 634. Dr. Tatum's notes state that Ruffin had had twelve visits to the emergency room during the previous 24 months. *Id.* Dr. Tatum's diagnosis was low back pain, bilateral leg pain (affecting Ruffin's ability to stand, bend, stoop, squat, lift, reach, and push/pull), a history of hypertension, a history of diabetes, and chest pains from coronary disease likely with a history of previous myocardial infarction, for which Dr. Tatum recommended a current stress test. R. 636. Dr. Tatum opined that Ruffin could lift/carry less than ten pounds, could stand/walk two hours in an eight-hour day, could sit four hours, but only 45 minutes without interruption,

could occasionally balance, stoop, crouch, kneel, reach, push, and pull, and should never work at heights or near moving machinery. R. 639-41. Dr. Tatum observed that Ruffin's chest pain should be evaluated before he engaged in any heavy exertional activity. R. 641.

On October 13, 2010, Dr. Saddler gave an update of his own assessment, stating that Ruffin's impairments were not severe. R. 690.

At the supplemental hearing, Ruffin testified that he suffers from numbness in his right leg and back pain at a level of ten every day, although his medication gives him some relief. R. 42. He also said that he suffers from lower abdominal pain as a result of an enlarged prostate. R. 37. According to Ruffin, he would not be able to work at any job for forty hours a week because of his pain. R. 43.

A vocational expert (VE) testified concerning the exertional requirements of Ruffin's past relevant jobs. According to the VE, Ruffin's past jobs of forklift operator, lubrication technician, and truck driver are classified as medium, whereas the job of auto parts salesperson is light work. R. 59-60.

### III. The Decision of the ALJ and Analysis

In his decision, the ALJ worked through the familiar sequential evaluation process for determining disability.[1] He found that Ruffin has the severe impairment of mild facet

---

[1] In evaluating a disability claim, the ALJ is to engage in a five-step sequential process, making the following determinations:

(1)  whether the claimant is presently engaging in substantial gainful activity (if so, a finding of "not disabled" is made);


arthropathy and the nonsevere impairments of hypertension, enlarged prostate, and diabetes. R. 19-20. At step three, the ALJ determined that Ruffin does not have an impairment or combination of impairments that meets or medically equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 21. The ALJ found that Ruffin has the residual functional capacity to perform the full range of medium work as defined by 20 C.F.R. § 416.967(c). R. 21. In making this determination, the ALJ stated that he gave significant weight to the initial (October 5, 2008) RFC assessment of Saddler and little weight to the opinion of Dr. Tatum. R. 22-24. He gave no weight to Dr. Saddler's later statement that Ruffin had no severe impairment, stating that evidence submitted subsequent to that opinion showed additional treatment for back pain. R. 22. Relying upon the testimony of the VE, the ALJ determined that Ruffin can perform his past relevant work and is therefore not disabled. R. 23.

---

    (2)    whether the claimant has a severe impairment (if not, a finding of "not disabled" is made);

    (3)    whether the impairment is listed, or equivalent to an impairment listed, in 20 C.F.R. Part 404, Subpart P, Appendix 1 (if so, then the claimant is found to be disabled);

    (4)    whether the impairment prevents the claimant from doing past relevant work (if not, the claimant is found to be not disabled); and

    (5)    whether the impairment prevents the claimant from performing any other substantial gainful activity (if so, the claimant is found to be disabled).

*See* 20 C.F.R. §§ 404.1520, 416.920. The analysis ends at the point at which a finding of disability or non-disability is required. The burden to prove disability rests upon the claimant throughout the first four steps; if the claimant is successful in sustaining his burden through step four, the burden then shifts to the Commissioner at step five. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

In reviewing the Commissioner's decision, this court is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990).[2] In his memoranda, Ruffin makes essentially two arguments: (1) that the ALR erred in his assessment of Ruffin's RFC; and (2) that the ALJ erred in concluding that Ruffin can return to his past relevant work.

*Residual Functional Capacity*. Ruffin's primary argument regarding the ALJ's assessment of his RFC relates to the relative weight given by the ALJ to the opinions of Dr. Saddler, a non-examining consultant, and Dr. Tatum, an examining consultant. In evaluating a disability claim, an ALJ is to consider all medical opinions in the record. 20 C.F.R. §§ 404.1527(b) and 416.927(b). However, he is free to reject any opinion, if the evidence supports a contrary conclusion. *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995). Here, the ALJ gave a sound explanation of his reasons for giving significant weight to Dr. Saddler's RFC assessment and little weight to Dr. Tatum's opinion. He noted that Dr. Saddler's opinion was consistent with the medical record, particularly the lack of radiologic confirmation of a severe back condition. On the other hand, as the ALJ

---

[2] "To be substantial, evidence must be relevant and sufficient for a reasonable mind to accept it as adequate to support a conclusion; it must be more than a scintilla but it need not be a preponderance. . . ." *Anderson v. Sullivan*, 887 F.2d 630, 633 (5th Cir. 1989) (quoting *Fraga v. Bowen*, 810 F.2d 1296, 1302 (5th Cir. 1987)). If the Commissioner's decision is supported by substantial evidence, it is conclusive and must be affirmed, *Paul v. Shalala*, 29 F.3d 208, 210 (5th Cir. 1994) (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)), even if the court finds that the preponderance of the evidence is *against* the Commissioner's decision, *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994).

explained, the history of myocardial infarction and frequent chest pain given to Dr. Tatum by Plaintiff was not supported by the record.  This history was an integral part of Dr. Tatum's opinion:  He characterized Ruffin's chest pain as a moderate impairment, and his assessment of Ruffin's residual functional capacity appears to have rested in part on his belief that Ruffin should not engage in any heavy exertion until his chest pain could be evaluated.  The ALJ was entitled to give little weight to Dr. Tatum's opinion because the medical evidence does not support the cardiac history accepted by Dr. Tatum in formulating his opinion as to Ruffin's limitations.

In further support of his attack on the ALJ's reliance on the October 5, 2008, opinion of Dr. Saddler, Ruffin argues that Dr. Saddler's subsequent report was so inconsistent with his earlier one that the ALJ was not entitled to rely upon the earlier opinion.  In his initial report, Dr. Saddler gave Ruffin an RFC assessment consistent with the ability to perform medium work.  In his updated assessment of October 13, 2010, Dr. Saddler stated that Ruffin's impairments were not severe.  Ruffin argues that this latter opinion was inconsistent with the earlier opinion because nonseverity equates with the ability to perform a full range of work at all exertional levels, including heavy.  This argument is unpersuasive.  While severity of an impairment and RFC are often related, the terms are not equivalent.  A statement that a person's impairments are not severe is not equivalent to a statement that he can perform very heavy work.  There is simply no inconsistency to support Ruffin's argument on this point.

*Past Relevant Work*.  Ruffin argues that the ALJ's finding that he could perform his past relevant work cannot stand because it was based upon inadequate expert testimony

9

by the VE. His specific complaint is that the transcript "fails to disclose any VE testimony pertaining to Plaintiff's remaining ability to perform any past job." The VE gave testimony as to the exertional requirements of each of Ruffin's past relevant jobs, all of which the VE rated as either light or medium work. The ALJ, having concluded that Ruffin could perform the full range of medium work, found that Ruffin could perform these jobs. No further expert opinion was required. The undersigned finds no error in the ALJ's step four determination.

*Other arguments.* Several other matters mentioned in Ruffin's memoranda warrant only brief discussion. In one of the headings in his initial brief, Ruffin states that the ALJ erred in failing to give a "function-by-function" evaluation of each of Ruffin's exertional limitations and in failing to consider the combined effect of all of Ruffin's impairments. Neither of these arguments is addressed in the body of the memoranda, and the undersigned rejects them as both abandoned and without merit. Ruffin also states that the ALJ erred at step two in failing to find that numerous other conditions constitute severe impairments. The undersigned finds that the ALJ applied the correct standard and that substantial evidence supports his findings that none of Ruffin's other conditions would be expected to have an effect on his ability to perform work-related activities. *See Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985).

Finally, Ruffin contends that hypotheticals posed by the ALJ to the VE unfairly led Ruffin and his attorney to believe that the ALJ would find that Ruffin was capable of only sedentary work. At the supplemental hearing, the ALJ asked the VE whether a person closely approaching advanced age with Ruffin's education and work history and limited to

sedentary work would have any transferrable skills.  R. 46.  The VE's response was in the negative.  *Id.*  The ALJ did not pose any questions regarding any other exertional level.  Ruffin's argument appears to be that he would have posed additional questions to the VE had he realized that the ALJ was not going to find that Ruffin was limited to sedentary work.  However, Ruffin has failed to establish that the ALJ committed error in this regard or that reversal is warranted because of it.  Ruffin was in no way prevented from questioning the VE in whatever manner he believed appropriate.  This argument is without merit.

## IV.  Conclusion

The undersigned concludes that the ALJ's decision was supported by substantial evidence and that no reversible errors of law were committed.  Accordingly, the undersigned recommends that Plaintiff's motion be denied, that Defendant's motion be granted, and that the decision of the Commissioner be affirmed.  The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendation contained within this report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court.  28 U.S.C. § 636; Fed. R. Civ. P. 72(b); *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

Respectfully submitted, this the 23rd day of June, 2014.

/s/ F. Keith Ball  
UNITED STATES MAGISTRATE JUDGE